# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY.

## JANUARY TERM, 1895.

CASE 1—PETITION EQUITY—FEBRUARY 21.

## McCallister v. Bethel.

APPEAL FROM HENDERSON CIRCUIT COURT.

CONSTRUCTION OF DEVISE.—Where an estate is given or devised generally or indefinitely with a power of disposition the fee passes, and a remainder to take effect in the event the estate is not disposed of is void. It is only where the interest of the first taker is expressly limited to a life estate that the power of disposition does not carry the fee, and that the remainder can take effect in the event there is no disposition of the estate by the first taker.

Under a devise of land to A in trust for B and at B's death to his children, if any, but if none, then to any person to whom B may devise it, there being nothing in the language creating the trust indicating an intention to limit B's interest to a life estate, he takes the fee subject to be defeated only in the event of his dying leaving children; and if he dies leaving no child and without disposing of the property, it passes to his.heirs and not to the residuary devisees under the will.

YEAMAN & LOCKETT FOR APPELLANT.

Joseph McCallister took a defeasible fee and not a life estate merely. Where an estate is given to a person generally or indefinitely with a power of disposition, it carries a fee, and the only exception to the rule is where the testator gives to the first taker an estate *for life only by certain and express words* and annexes to it a power of disposal. (Herbert v. Herbert, 85 Ky., 134; McCullough's Adm'r v. Anderson, 90 Ky., 126; Jackson v. Robbins, 16 John.,587; Caleb v. Field, 9 Dana, 347; Coats' Ex'or v. L. & N. R Co., 929 Ky. 263; Henderson v. Hall, 80 Ky., 91; Pate v. Barrett, 2 Dana, 427.)

Vol. 97.—1.

MONTGOMERY MERRITT & A. T. DUDLEY FOR APPELLEE.

Joseph McCallister took only an estate for life in the farm devised
to J. E. McCallister in trust for him. (Pate v. Barrett and wife,
2 Dana, 426; Caleb v. Field, 9 Dana, 345; Coats' Ex'or v. L. & N. R.
Co., 92 Ky., 263; Anderson v. Hall, 80 Ky., 91; McCullough's Adm'r
v. Anderson, 90 Ky., 126; Herbert's Guard'n v. Herbert's Ex'or,
8 Ky. Law Rep., 752.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

Ben Talbot owned a large estate and the appellee, Maria
Bethel, is his only child. Joseph McCallister was his wife's
nephew, and a very improvident and intemperate man.

Joseph McCallister owned three good farms of about one
hundred and fifty acres each. He became involved, princi-
pally by security debts, in amount approximating seven
thousand dollars.

On the 2d day of August, 1877, in consideration of seven
thousand dollars, all of which, except four hundred and two
dollars and ninety-eight cents, was to be applied to the pay-
ment of his debts, Joseph McCallister conveyed to Ben Tal-
bot his three farms, together with a large amount of per-
sonal property. He surrendered possession of two of the
farms, but retained, with the consent of the grantee, possess-
ion of one of them, known as the "Warfield farm." He oc-
cupied and used it as his own from the date of the
deed until the death of Ben Talbot, which occurred in 1884.
The record shows that the property which Talbot obtained
under his deed from Joseph McCallister, outside of the
Warfield farm, fully reimbursed him for the money he had
paid.

The evident purpose of Ben Talbot was not to profit by
the misfortunes of his wife's nephew, but to assist him in re-
taining a part of his estate for his use and enjoyment.

On the 6th of September, one month and four days after

Joseph McCallister made him the deed, Ben Talbot made his will, containing three clauses.

By the first, after the payment of his funeral expenses, debts, etc., he gave the appellee, Maria Bethel, his money and the proceeds of his personal property, which was to be sold by his executors.

By the third clause he gave the residue of his estate, of whatsoever kind, to her during her natural life and then to the children of her body.

The interpretation of the second clause of the will is involved in this action. It reads as follows:

"I will and devise to John E. McCallister my Warfield farm, lying in the point above the mouth of Green river, in Henderson County, Ky., next adjoining the lands of John E. McCallister, containing about one hundred and fifty acres, more or less, in trust for Joseph McCallister. He shall have power to rent out the farm and collect the rents and pay them out for the support and maintenance of said Joseph McCallister, or he may, if he thinks best, rent the farm to said Joseph, but I wish and order that the farm, or its proceeds, shall never be liable for any debt of said Joseph's, contracted without the consent of said trustee, and if any creditor of said Joseph shall garnishee or attempt to stop the rent or money so that it will not go to the maintenance of said Joseph, I will and order the trustee to stop the payment to such creditor, and I order him to pay it out for the support and maintenance of said Joseph, accordingly as Joseph may need it. I further will and devise this farm, after the death of Joseph McCallister, to the children of Joseph McCallister, if he has any, but if he has no heirs of his body it shall pass or go to any person said Joseph may will and devise it to and it shall be theirs forever."

Joseph McCallister died intestate and without children.

The question is whether the farm goes to the appellee, Maria Bethel, and her children, under the will of Ben Talbot, or to the nearest of kin of Joseph McCallister, who are the appellant and the appellee, Maria Bethel. If the will of Ben Talbot had simply carved out of the fee a life estate for Joseph McCallister, then he having died without children, and having made no will, the farm would go to the residuary devisees under the will of Ben Talbot.

In construing a will we should always have in mind the purpose and intention of the testator and effectuate that.

The testator having the right of disposition of the estate he has accumulated, his desires should be followed as far as the law will allow.

Out of his abundance Ben Talbot had munificently provided for his daughter and her children. His kindly interest in his wife's unfortunate nephew lingered with him until the last, as is evidenced by his will. He was evidently a just man, because, when he found himself repaid the sums he had expended for Joseph by the acquisition of two of his farms, he permits Joseph to retain the use of the third, and secured it to him by the terms of his will. Who can doubt that Ben Talbot had the desire to be just, as well as benevolent, with Joseph McCallister when he thought of disposing of his estate?

However, it is not necessary to consider any of the facts surrounding the previous ownership of the farm in order to determine what was the intention of the testator.

The farm is willed to John E. McCallister in trust for Joseph. There is no word or phrase in the language creating the trust to show that he was taking only a life interest in the land. It was given in trust to him generally—in fee.

There seems to be no term that can be employed which expresses the character of estate which he took so well as

to say it was a defeasible fee; that is to say, he was vested with the fee, and his right thereto could only be defeated upon the happening of the event of having bodily heirs. The event never having transpired, he retained the fee. There is no expression or word used which requires the trustee to give Joseph the rents during his life, so as to indicate an intention upon the part of the testator that he was to have only a life estate in the land. It is perfectly manifest from the will that the testator knew how to create a life estate in a devisee, as in the first clause of the will he gives his daughter absolutely his money and proceeds of his personal property ordered to be sold, and in the third clause he gives her a life estate in his realty and the remainder to her children.

Had he intended that Joseph should only take a life estate in the farm he would have said so, as he did in the case of his daughter. Had he intended that his daughter and her children should take the Warfield farm as his residuary devisees he would have said that in the event of Joseph having no bodily heirs that then it was to go to his daughter and her children. As a further evidence of the fact he did not so intend that they should take the Warfield farm as such devisees he provided, in case the event did not happen which would divest Joseph of the fee, that the farm should pass "to any person said Joseph may will and devise it to, and it shall be theirs forever."

Having given Joseph the fee it was wholly unnecessary for the testator to emphasize the fact by trying to confer upon him the right to will the farm to whomsoever he pleased. The right to so dispose of the farm was incident to the estate which the testator gave him, and no further words were necessary to be employed to enable him to do so, unless he had bodily heirs. It is quite unusual for opposing counsel

to cite the same cases decided by this court to sustain their respective positions. The cases which they cite are uniform and certain in announcing the same doctrine. We will refer to some of them to show the facts are quite different from what they appear to be in this case, and that the conclusions reached are in harmony with the principles therein announced.

In McCullough's Admr. v. Anderson, 90 Ky. 126, the testator willed to his wife during her life all his estate, with ample authority to dispose of the whole of it as she pleased. If at her death she had made no testamentary disposition of it then the remainder was to go to certain persons. The testator's wife was given the life estate, with the right, if she chose to exercise it, to defeat the remainder. She did not choose to exercise it, and the court held that the estate went to those to whom it was given in remainder, and not to her heirs.

In the case of Coats' Ex., v. L. & N. R. Co., 92 Ky., 263, it appears that Matthew H. Coats devised his estate to his wife, Beulah Coats, with absolute power to sell during her life. At the death of his wife such of his estate as remained unexpended was specially devised to various persons.

The court held that the wife only took a life estate.

In Pate v. Barrett, 2 Dana 426, the testator devised to his sister, Janet Crawford, a mulatto girl, Nelly, during her life, and at her death the devisee to leave Nelly to any of her children she saw proper, or to free her by emancipation, as she pleased. The court held that she only took a life estate in Nelly, with power to dispose of her, but as it was never exercised Nelly reverted to the testator.

We do not deem it necessary to make any reference to other cases cited by counsel. The cases to which attention are called herein in effect decide that when the testator de-

vises his estate to one for life, with power to dispose of it by will or deed, and that power is not exercised, the estate in remainder (if one has been created by the will) has not been defeated, or if there is no estate in remainder created by the will and the life tenant fails to exercise the power of disposition then it reverts to the estate of the testator.

But the court in the case of Herbert's Gdn. v. Herbert's Ex., etc., 85 Ky. 149, said: "It might be well argued that a devise to a stranger for life with such an unlimited power of disposition would pass the fee."

In McCullough's Admr. v. Anderson, *supra*, Judge Pryor, in delivering the opinion of the court, said:

"After a careful review of all the authorities to which our attention has been called, the rule sanctioned and followed is this: If the estate is given or devised generally or indefinitely with a power of disposition, it passes a fee, but when the devisor or grantor owning the fee gives to the first taker an estate for life, with the power to dispose of the fee, no greater estate is vested in the first taker than that carved out of the fee and vested in him by the devisor or grantor. He is given a life estate in express terms, and the failure to exercise the power gives to the remainderman the fee, because no disposition having been made of it by the life tenant, he takes under the will or conveyance. It is said 'if an estate be given to a person generally or indefinitely, with a power of disposition, it carries a fee, unless the testator gives the first taker an estate for life only, and annexes to it a power of disposition. In that case the express limitation for life will control the operation of the power and prevent it enlarging the estate into a fee.' (4 Kent's Commentaries, 535-536)."

We are of the opinion that the legal estate in fee was held

in trust for the immediate devisee, Joseph McCallister, with the power of disposition annexed in the event he died without bodily heirs.

The devisor reserves no interest to himself or to his heirs in the realty devised, and there is no contingency upon which it is to revert; but on the contrary, his plain intent was to divest himself of title, passing it to the trustee with a limitation upon the power of disposition by the beneficiary in the event he died leaving children.

The distinguishing feature between a life estate with the power of disposition, and an estate where the fee passes to the immediate devisee, subject to be divested upon the happening of a contingency, is that when an estate for life is expressly given and the power of disposition not exercised by the life tenant, all his interest in the estate ceases at his death, but when the fee is given in the first instance, as in this case, and the contingency upon which the title is to be divested or restricted never happens, then at the death of the person holding the fee the estate devised passes by descent to his heirs at law if not disposed of by will, and the attempt to limit the power of disposition by will only becomes nugatory.

Joseph McCallister dying without children, the farm passes, by descent, to his heirs at law.

Judgment reversed with direction that further proceedings be had consistent with this opinion.