CASE 83—EQUITY—MARCH 28.

# Albert Bohon, &c., v. B. F. Bohon, &c.

APPEAL FROM WOODFORD CIRCUIT COURT.

1. It is a general rule that cross-remainders in a deed can be given only by express limitation, and can never be implied, while as to wills a more liberal construction obtains.

2. An estate in fee may be made to pass out of the grantor so as to remain in abeyance pending the existence of the particular estate. A conveyance to H. and B for life and to their children forever vests no interest in the heirs of the grantor upon his death, before the termination of the particular estate.

3. The deed of an heir apparent conveying the estate out of which his interest is to arise will operate by way of estoppel against him, but not as against his heirs against whom there is no covenant of warranty.

MESSRS. BRECKINRIDGE & SHELBY FOR APPELLANTS.

1. Upon the death of Mrs. Henderson without children, the remainder-interest in the moiety of which she was life tenant passed to the children of Mrs Bohon.

2 Even if that moiety reverts to the heirs of Mrs. Evans, the children of Mrs. B. are entitled, as heirs of Mrs. E., to one-fifth of it. (Preston on Estates, 94; 1 Hilliard on Real Estate, chap. 59; 4 Cruise's Digest, 319; 1 Saunders' Reports, 186; 2 East, 36; Staunton v. Peck, 2 Cox, ch. 8; 2 Bailey, 445; 4 Kent, 258-60)

MESSRS. P. S. KINKEAD, E. F. TRABUE AND H. C. McLEOD FOR APPELLEES.

1. The fee in the moiety conveyed by Mrs. E. to Mrs. H. was limited by way of contingent remainder to her child when it came *in esse*, and if she never had children the remainder failed, and that part of the land reverted to the heirs of the grantor. (Rev. Stat., 228; Ib., chap."21, sec. 12; 44 Miss., 709; Smith v. Payne. 2 Bush, 589; Churchill v. Terrell, 1 Bush, 57; Foster v. Shreve, 6 Ib., 530; Connelly v. Branstter, 3 Ib., 703; Wash. on Real Prop.. vol. 2, 517; Hilliard on Real Estate, chap. 59; Black's Comm., book 2,'381; Minor's Inst., vol. 2, 430-1.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

In 1853 Mrs. Elizabeth Evans conveyed to her nieces, Elizabeth N. Bohon and Susan E. Henderson, during their

natural lives, a certain piece of land, stipulating in the conveyance that "at the death of said grantees or at the death of either of them, the shares of said decedents or of either of them shall go to their children forever." Mrs. Elizabeth N. Bohon died in 1855, leaving children. Mrs. Evans died in 1859, leaving two heirs, her sisters, Lucy Bowles and Mary P. Bowles. In 1860 Mrs. Mary P. Bowles conveyed to B. F. Bohon "all of her right, title, and interest, whether contingent, or in possession, reversion, or remainder in and to the undivided one half of" the land in question. In 1864 Lucy Bowles died intestate, as to this land, leaving her sister, Mary P. Bowles, her only heir. In 1871. Mary P. Bowles died, leaving as heirs her daughter, Susan E. Henderson, her sons, Gustavus, Quincy, and Joseph I. Bowles, her granddaughter, Cora Phillip, and her grandchildren, the children of Mrs. Elizabeth N. Bohon. In 1872 Mrs. Henderson died without children.

The question presented is, what interest did the children of Mrs. Elizabeth N. Bohon take in the Henderson moiety of the land deeded by Mrs. Evans to Mrs. Henderson and Mrs. Bohon?

It is contended by counsel for the children of Mrs. Bohon—

1st. That they take, by way of cross-remainder, the whole of the Henderson moiety;

2d. That if that moiety reverted to the heirs of Mrs. Evans, the children take one sixth of it through their grandmother, Mary P. Bowles, whose deed, executed in 1860 to B. F. Bohon, they claim to be inoperative;

3d. That even if the deed to B. F. Bohon operated to convey the interest of Mrs. Mary P. Bowles to one half of the Henderson moiety, it did not affect the interest of Lucy Bowles, which, on her death in 1864 descended to Mrs.

Mary P. Bowles, and that the children of Mrs. Bohon are entitled, through their grandmother, Mary P. Bowles, to one sixth of the interest in the moiety which descended to Lucy Bowles on the death of Mrs. Evans.

As to the first point suggested, we are of the opinion that the deed of Mrs. Evans does not manifest an intention that the children of one of the grantees should take the whole of the estate in remainder in case the other grantee should die without children. Such an intention, if it existed, could have been easily expressed, and on a failure to so express it we must presume that it did not exist. It is a general rule that cross-remainders in a deed can be given only by express limitation, and shall never be implied, while in wills a more liberal construction is given, and they may be raised by implication. (Vol. 2, Minor's Institutes, page 432.) But if the rule of construction applicable to wills be applied here, there is nothing in the deed itself from which the court would be authorized to determine that the grantor intended to create a cross-remainder. Such an implication can only arise from the language of the deed expressive of such intention.

A determination of the second and third propositions depends upon the question as to whether the fee passed out of Mrs. Evans at the date of the conveyance to Mrs. Henderson and Mrs. Bohon and remained in abeyance until the death of Mrs. Henderson, without children, and vested in the then heirs of Mrs. Evans by way of reversion, or whether the fee remained in Mrs. Evans, and at her death passed to her heirs, Lucy and Mary Bowles.

That an estate in fee may be made to pass out of the grantor so as to remain in abeyance, in the clouds, in no person, pending the existence of the particular estate, seems to be well settled, notwithstanding the able argument of Mr..

Fearn to the contrary. (Fearn on Remainders, 452–458; 4 Kent's Commentaries, pages 259, 260; 2 Blackstone, 107; 2 Minor's Institutes, 74, 75.) That Mrs. Evans intended to pass out of herself all interest in the land is manifest. from the language of the deed, which is to Mrs. Henderson and Mrs. Bohon for life, and "to their children forever," reserving in the grantor the right to control the property during her life. It results, then, that, on the death of Mrs. Evans, Lucy and Mary Bowles took no vested interest in the land, and, consequently, that Mrs. Mary Bowles took nothing on the death of Lucy Bowles in 1864, because no interest had vested in her. Her interest was in expectancy merely, contingent upon surviving Mrs. Henderson, and upon Mrs. Henderson leaving no children, and consequently ceased, on the death of Lucy Bowles, to be even a possibility.

The inquiry remains as to the effect of the deed made by Mrs. Mary Bowles and others to B. F. Bohon. The deed, which was executed by Mrs. Bowles, some of her children, and Mrs. Henderson, has this clause: "The said Mary P. Bowles further covenants that she will warrant the title to the property hereby conveyed against the claim or claims of herself and of her children, and the descendants of such of her children as have died, *except that she does not warrant against the children of Benjamin F. Bohon and Elizabeth N. Bohon.*"

It is manifest that, so far as it can affect the children of Elizabeth N. Bohon, this is simply a quit-claim deed, that may be permitted to operate by way of estoppel against the parties to the deed, but not as against such heirs even of the grantors against whom there is no covenant of warranty.

" Thus a simple release by an heir apparent of his chance of succession, though made by deed, will not bar his title when it accrues.   So one who has a contingent remainder, an interest by way of executory devise, or a possibility like that of an heir apparent, even though he may not at common law make a grant of such an interest by deed so as to pass the same distinctly, may convey the estate out of which his interest is to arise in such a manner that this will operate as an estoppel, and prevent his claiming such an interest when it arises.   Thus equity holds a contract of an expectant heir, who becomes heir *de facto*, binding on him, though equity does not extend this to his heir." (Washburn on Real Property, vol. 3, pp. 94, 95.)   Mr. Washburn also says that to work an estoppel in such cases there must be either a grant or release with a general covenant of warranty, or an express affirmation in the grantor's deed of there being an estate such as he assumes to convey.

According to our construction of the deed of Mrs. Evans, there was no estate in Mrs. Bowles at the time of her death or at the time she executed the deed.   She had at most an expectancy, a possibility, which is all that she purports by her deed to convey.   She does not purport to convey such interest as the children of Mrs. Bohon may be entitled to in expectancy then or in possession at the death of Mrs. Henderson.   Mrs. Bowles' deed, then, conveys no estate, but operates simply as an estoppel, and does not prevent the children of Mrs. Bohon, against whom there is no warranty, from taking such an interest at the death of Mrs. Henderson as they would have taken if the deed had not been executed. The claim of these children is not as the heirs of Mrs. Bowles but as the heirs of Mrs. Evans.   Although the relationship comes through Mrs. Bowles, the estate does

not. The estate never rested in her at any instant of time, nor did she have anything to do with giving direction to it. The interest of the children of Mrs. Bohon is no more nor no less than it would have been if Mrs. Bowles had died before the deed was made by Mrs. Evans.

It results that, in our judgment, the children of Mrs. Bohon, at the death of Mrs. Henderson, took, as heirs of Mrs. Evans, one-fifth of the moiety held by Mrs. Henderson for life, in addition to the moiety derived by the deed from Mrs. Evans on the death of their mother.

Wherefore, the judgment is reversed, and cause remanded, with directions for further proceedings consistent with this opinion.